UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID B. HEARNE,<br><br>Defendant. | Criminal Action No. 04-130 (JEB) |

# MEMORANDUM OPINION

In 2004, David Hearne pled guilty to violating 18 U.S.C. § 922(g), which prohibits individuals who have previously been convicted of a felony from knowingly possessing a firearm. He has now filed a Motion to Vacate his Conviction in light of the Supreme Court's decision in Rehaif v. United States, 588 U.S. 225 (2019). There, the Court held that a § 922(g) conviction can be sustained only if the defendant knew at the time he possessed the firearm that he fell into a category of persons who could not lawfully do so. Contending that he did not know when he pled guilty to violating § 922(g) that he had a prior felony conviction, Hearne moves this Court to vacate his plea pursuant to 28 U.S.C. § 2255. Because Defendant has not shown a reasonable probability that he was prejudiced by his lack of awareness of § 922(g)'s knowledge requirement or that he was actually innocent of violating the statute, the Court will deny his Motion.

I.  Background

Hearne has struggled with mental-health issues since childhood. Without medication, he experiences hallucinations and hears voices; as a result, he has received diagnoses of bipolar I

1

disorder and schizophrenia, and he has been committed to mental-health institutions several times. See ECF No. 72 (Tr.) at 19:3–9, 20:1–21:12. He has a fifth-grade education and can read and write only "a little bit." Id. at 19:16–25. In 1995, he was committed to a juvenile correctional facility in Powhatan County, Virginia. See ECF No. 52 (Def. Exhs.) at 62, 79.

While in custody in 1997, Defendant was charged with five felonies in Virginia, all of which involved his injuring facility staff members. See ECF No. 61-1 (Gov't Opp., Exh. A) (Va. Pretrial Records) at 1–5. During those proceedings, he was represented by court-appointed attorney Lee Harrison, who had Hearne evaluated for competency. Id. at 7, 23–25; ECF No. 61-2 (Gov't Opp., Exh. B) (Va. Trial Records) at 8–9; Tr. at 77:7–15. After being found competent to assist in his defense, see Tr. at 79:9–10; Va. Pretrial Records at 26–30, Hearne was convicted of four felony counts and sentenced to 30 years of incarceration with 25 years suspended. See Va. Trial Records at 11–15. He served about four years and received mental-health treatment throughout his confinement. See ECF No. 74 (Gov't Supp.) at 14–15 (Gov't Exh. C) (Va. Confinement Records).

Seven years later, in 2004, Hearne was indicted in the District of Columbia for felon in possession of a firearm and ammunition (FIP), in violation of 18 U.S.C. § 922(g). See ECF No. 22 (Superseding Indictment). He pled guilty, see Minute Entry of Aug. 3, 2004; ECF No. 25 (Plea), and was sentenced by Judge Ricardo Urbina (now deceased) to 100 months of incarceration. See ECF No. 31 (Judgment). Because he subsequently was convicted of aggravated assault of a federal officer while serving that sentence, Hearne remains incarcerated twenty years after his § 922(g) conviction. See United States v. Hearne, No. 09-3 (S.D. Ind. June 30, 2010), ECF No. 37. He is scheduled to be released in 2026. See Gov't Opp. at 8.

In 2019, the Supreme Court held that in a FIP case the Government must prove not only that the defendant possessed a firearm but also that he <u>knew</u> he belonged to a category of persons barred from doing so. <u>Rehaif</u>, 588 U.S. at 237. Following that decision, Hearne filed this Motion to Vacate in June 2020. After a period of briefing, prolonged by extensions, the Motion became ripe in January 2024. To resolve the disputed factual issues, the Court held an evidentiary hearing on July 9, 2024, and heard testimony from Hearne's cousin, Hearne himself, and attorney Harrison. <u>See</u> Minute Entry of July 9, 2024.

On the stand, Hearne recounted the events of both 1997 and 2004. He testified that he did not recall ever meeting with Harrison or any other attorney during the Virginia criminal action, <u>see</u> Tr. at 22:18–23, 23:19–24:15, 40:6–12, and that he did not remember any Virginia court proceedings aside from the sentencing. <u>Id.</u> at 40:5–18. As a result, Defendant explained, he did not understand that he was being convicted of felonies as an adult. Instead, he believed that he was convicted of juvenile charges and that he served his sentence in a mental-health facility rather than a prison. <u>Id.</u> at 24:1–9, 25:10–27:22, 37:4–23. According to Hearne, he still did not know that he had a prior felony conviction when he possessed the firearm in 2004. <u>Id.</u> at 37:1–23, 57:16–20. Nonetheless, Hearne continued, he pled guilty to violating § 922(g) so that he would receive a definite end date for his incarceration, as opposed to pleading not guilty by reason of insanity and being held at a mental-health institution indefinitely. <u>Id.</u> at 28:24–29:7, 33:6–22, 35:10–22, 39:8–19, 52:9–20, 56:16–57:15. Although Hearne was informed at his plea hearing that he possessed a felony conviction, <u>id.</u> at 31:8–33:3, 34:8–35:9, 36:9–23, 37:13–20, he was not told that he had to have known about that conviction when he committed the firearm offense. Defendant maintained in response to questioning from counsel that, had he been aware

in 2004 that the Government was required to show that he had such knowledge, he would have gone to trial rather than pleading guilty. Id. at 39:23–40:4.

Harrison testified that he could not recall the specific representation in 1997 and discussed his general practice as a criminal lawyer. Id. at 60:20–61:8. He explained that, at the time of Hearne's underlying felony convictions, juveniles received transfer hearings before being prosecuted as adults. Id. at 61:17–62:2. Harrison also outlined his process for representing clients in criminal matters: he informed them of their charges and the possible consequences, then discussed the evidence and potential paths forward with them. Id. at 62:5–17. According to Harrison, those conversations would have included the consequences of being convicted of a felony. Id. at 67:2–68:1.

## II.  Legal Standard

A defendant in federal custody may move the court that imposed his sentence "to vacate, set aside or correct the sentence" on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). As courts in this district have recognized, "Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a Section 2255 motion." Bedewi v. United States, 583 F. Supp. 2d 72, 76 (D.D.C. 2008) (internal quotation marks and citation omitted). The defendant bears the burden of demonstrating that he is entitled to relief under § 2255. United States v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).

## III.  Analysis

Hearne's § 2255 Motion rests on his contention that he did not know at the time he pled guilty to violating § 922(g) that a required element of the offense was not merely having a prior qualifying conviction but knowing that he had such a conviction. Because he lacked that

4

knowledge, Defendant argues, his guilty plea was effectively involuntary — thereby violating the Constitution and Federal Rule of Criminal Procedure 11(b)(G) — and must be vacated. See ECF No. 33 (Mot.) at 2–3.

Hearne's initial position is that a plea that is deficient under Rehaif qualifies as a structural error and, as a result, "will 'always result[] in fundamental unfairness.'" Id. at 3 (alteration in original) (quoting Weaver v. Massachusetts, 582 U.S. 286, 296 (2017)). Structural errors render a criminal trial fundamentally unfair and therefore require automatic reversal. Washington v. Recuenco, 548 U.S. 212, 218–19 (2006). Because Hearne did not fully understand the § 922(g) charge when he pled guilty, he reasons, he necessarily suffered a "fundamentally unfair, manifestly unjust, and unconstitutional" proceeding. See Mot. at 4. To support that contention, he cites United States v. Gary, 954 F.3d 194 (4th Cir. 2020), where the Fourth Circuit held that the district court's omission of the Rehaif element from the plea colloquy constituted "a structural error that requires the vacatur of [the defendant's] guilty plea and convictions." Id. at 201. The Supreme Court, however, overruled Gary and held that "a Rehaif error in a plea colloquy is . . . not structural." Greer v. United States, 593 U.S. 503, 513 (2021). This Court accordingly concludes that Hearne's lack of awareness of the Rehaif element during his guilty plea was not structural error.

Absent structural error, Hearne concedes that he committed procedural default by neglecting to raise this argument on direct appeal. See ECF No. 64 (Reply) at 1. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). The Court will discuss each element in turn.

5

A.      Cause

Cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with" usual procedural requirements. Murray v. Carrier, 477 U.S. 478, 488 (1986).  For example, cause exists where a defendant's claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of the default.  Reed v. Ross, 468 U.S. 1, 16 (1984).

Hearne clears that bar.  The Supreme Court has explained that it creates a novel constitutional rule when it issues a decision "overtur[ning] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." Id. at 17 (internal quotation marks and citation omitted).  As Justice Alito has noted in regard to the question at issue here, "[E]ven after Congress added the mens rea requirement [to § 922(g)], all the courts of appeals to address the question have held that it does not apply to the defendant's status." Rehaif, 588 U.S. at 256 & n.6 (Alito, J., dissenting) (citing cases); see also United States v. Werle, 35 F.4th 1195, 1200 (9th Cir. 2022) ("[A]ll ten circuits that had addressed the issue [when defendant pled guilty in 2014] . . . had held that the Government was not required to prove that a defendant knew of his status as a felon at the time the defendant possessed the firearm.").  The Court's 2019 decision in Rehaif, then, overturned a longstanding consensus among the lower courts.  When such a decision is issued after the underlying criminal proceeding has concluded, the Supreme Court has held that "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme] Court has ultimately adopted." Reed, 468 U.S. at 17.

At the time Hearne pled guilty to violating § 922(g) in 2004, all eight courts of appeals to consider the question had held that defendants were not required to have knowledge of their

6

status. See Reply at 3–4 (citing cases). Contrary to the Government's contentions, then, Hearne's current claim was not merely "unacceptable to that particular court at that particular time," Gov't Opp. at 16 (quoting Bousley, 523 U.S. at 623) — it had been broadly and universally rejected by federal appellate courts. This Court therefore agrees with the Ninth Circuit's reasoning in a similar case that "there was no reasonable basis for [the defendant] to have argued that the Government was required to prove that he knew of his status as a felon at the time he possessed the firearm." Werle, 35 F.4th at 1200. As a result, Hearne's failure to press his claim on direct appeal is "sufficiently excusable to satisfy the cause requirement." Reed, 468 U.S. at 17.

    B.    Prejudice

Cause established, the Court turns to whether Hearne can demonstrate prejudice. "The Supreme Court has yet to define the exact contours of the prejudice standard in the § 2255 procedural-default context." United States v. McKinney, 60 F.4th 188, 195 (4th Cir. 2023). Instead, it has stated only that a defendant "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Our Circuit has interpreted this as a stringent bar for demonstrating prejudice. It has held that defendants must "at least demonstrate that there is a reasonable probability that, but for the errors, the result of the proceeding would have been different." United States v. Pettigrew, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (cleaned up). According to the Circuit, "[T]he 'showing of prejudice' required to overcome procedural default on collateral review 'is significantly greater than that necessary' to establish plain error on direct review." Id. (quoting Murray v. Carrier, 477 U.S. 478, 493–94 (1986)). Whereas a defendant on plain-error review must show that the error "affected the outcome of the district court proceedings," the Circuit explained, defendants seeking collateral

relief must establish prejudice with even greater certainty. Id. at 1144–45 (quoting United States v. Olano, 507 U.S. 725, 734 (1993). In fact, our Court of Appeals has even suggested that a defendant seeking to show prejudice on collateral review must demonstrate, "by a preponderance of the evidence, that the outcome . . . would have been different but for the errors in question." United States v. Dale, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998) (quoting United States v. Saro, 24 F.3d 283, 287 (D.C. Cir. 1994)).

Even were the Court to largely credit Hearne's testimony at the hearing, he has not shown that he was actually disadvantaged by not being fully informed of the § 922(g) elements. He repeatedly testified that he pled guilty to the § 922(g) charge in order to avert the indefinite term of confinement that would likely result from successfully claiming insanity. As Defendant explained, he was anxious to avoid being held at a mental-health facility for as long as the staff opted to keep him there, in part because his father was held in a psychiatric hospital for twenty years until his death. See Tr. at 33:6–22; see also id. at 28:24–29:7 ("[I]f I [claim insanity], I will go to [a psychiatric hospital], and I would go home when they want me to go home."). Hearne stated emphatically that he was "scared" of that fate and preferred going to prison with a defined release date. Id. at 57:2–11; see also id. at 33:13–19 ("[My lawyer] said, If you take this plea bargain, you will get that date for when you go home. I said, Cool, a hundred months, I will go ahead and do the hundred months because I wanted a date to go home. I didn't want to go to a mental hospital and try to get out of there and see them hold me for over 10 or 20 years or 30 years."); id. at 39:8–19 ("I wasn't stable to stand trial or anything. That's why I wanted to plead insanity, so I could go to the hospital and do my time. But like I told you, [my lawyer] said if you do that, you won't have a date [to go home]. And that's what I was scared of . . . .").

8

Hearne therefore was motivated to plead guilty to the § 922(g) offense by reasons that were entirely independent of his own culpability.

To be sure, he also testified that he would have gone to trial if he had known that a required element of a § 922(g) conviction was knowledge that he possessed a certain status. Id. at 39:23–40:4. And if he had been aware of the Rehaif element, he could have gone to trial, lost, and still ultimately received the clearly defined sentence he sought — albeit likely a longer one given the lack of credit for acceptance of responsibility. Defendant, then, has certainly shown that it was plausible that the outcome of his proceedings might have been different if he had been fully informed of the offense's elements. But our Circuit has held that Hearne must clear a much higher hurdle than mere plausibility; he must demonstrate that he actually would have acted differently. See Pettigrew, 346 F.3d at 1145–46. The Court finds that he has not so demonstrated. Throughout his testimony, Hearne emphasized how much he valued certainty. E.g., Tr. at 33:21–22 ("I wanted to have a date so I could go home and be with [my father] or my sisters."). He did not concretely explain why that preference for certainty would have been outweighed by a desire to proceed to trial, which by its very nature has an uncertain result and a potentially longer sentence. Because of Hearne's desire for a definite and knowable result, as well as the D.C. Circuit's stringent requirements for a reasonable probability of a different outcome, the Court concludes that he has not shown that he suffered prejudice by not being fully informed of the § 922(g) elements.

In sum, because he has not demonstrated prejudice, Defendant has not met the high bar for overcoming a procedural default for purposes of § 2255.

C.     Actual Innocence

Hearne has one other potential route to success here. He contends that he falls within an exception covering a "narrow class of cases": "extraordinary instances when a constitutional

9

violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494 (1991), superseded by statute on other grounds, Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(b), as recognized in Banister v. Davis, 590 U.S. 504 (2020).  A defendant can prevail only if "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536–37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  A mere showing "that a reasonable doubt exists" is not sufficient.  Schlup, 513 U.S. at 329.  According to Hearne, because he did not know of his status as a felon when he possessed the firearm in 2004, all reasonable jurors probably would have acquitted him of violating § 922(g).

That contention requires accepting, however, that all reasonable jurors would have accepted Hearne's premise — viz., that he did not know that he was a felon.  "As many courts have recognized and as common sense suggests, individuals who are convicted felons ordinarily know that they are convicted felons." Greer, 593 U.S. at 506.  Indeed, the Government at trial could have introduced substantial evidence that Hearne knew he had a felony conviction in Virginia.  For example, his initial charging documents alleged that he "feloniously" injured correctional staff, see Va. Pretrial Records at 1–5, as did his later grand-jury indictments.  See Va. Trial Records at 1–5.  After a hearing at which he, his counsel, and his guardian were present, Hearne was transferred out of juvenile court to be tried as an adult.  See Va. Pretrial Records at 30–32; see also Tr. at 61:21–62:2.  He was then convicted after a bench trial, during which he was present at all times.  See Va. Trial Records at 13.  Defendant was repeatedly found competent to participate in those proceedings.  See Va. Pretrial Records at 26–30.  Finally, Hearne was sentenced to 30 years of confinement with 25 years suspended.  See Va. Trial Records at 15; Tr. at 40:16–18.  And he ultimately served about four years in confinement.  See

Va. Confinement Records.  The D.C. Circuit has previously found similar evidence — *i.e.*, documents declaring that the defendant was being prosecuted for a felony offense and statements during hearings about the offense — supportive of a finding that the defendant knew he possessed a felony conviction.  See United States v. Henderson, 108 F.4th 899, 903 (D.C. Cir. 2024).  Several circuits have similarly held that serving more than a year in confinement tends to prove a defendant's knowledge of his status as a felon.  See, e.g., United States v. Innocent, 977 F.3d 1077, 1083 (11th Cir. 2020); United States v. Philippe, 842 F. App'x 685, 689–90 (2d Cir. 2021).  Indeed, § 922(g) expressly prohibits anyone who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm.  See 18 U.S.C. § 922(g).  That was Hearne.

Defendant nonetheless testified that, when he possessed the firearm that led to his § 922(g) conviction in 2004, he in fact did not know that he had been convicted of a felony in 1997.  Noting his lack of formal education and history of mental-health issues, he contends that the Court should not place undue weight on the Virginia court documents as evidence of his awareness of his status.  See ECF No. 73 (Def. Supp.) at 3–4.  Defendant further noted that his medication was not successfully treating his mental-health issues around the time of the Virginia proceedings.  See Tr. at 43:2–8.  Hearne explained that he thus believed at the time that he was charged as a juvenile, could not remember any judicial proceedings, and did not recall ever discussing the charges with his attorney.  See Tr. at 22:18–23, 24:1–9, 40:5–18.  He also indicated that, because he received mental-health treatment the entire time he was confined in Virginia, he did not understand that he had been imprisoned at all — to say nothing of being incarcerated for more than a year.  Id. at 26:15–27:1; 43:9–44:11.  Lee Harrison, Hearne's

Virginia attorney, testified to the contrary, explaining that he would certainly have told Hearne that he was pleading to a felony. Id. at 66:11–68:4.

Even if the Court discounts Harrison's recollection, Hearne has not satisfied the high standard for showing actual innocence. In other words, he has not demonstrated that it is more likely than not that no reasonable juror would have found him guilty. The charging documents aside, a reasonable juror could conclude that the evidence — including the abundant records showing that hearings were held in the Virginia proceedings and that Hearne spent four years incarcerated — collectively establishes that he knew that he possessed a felony conviction and, accordingly, violated § 922(g). Such a conclusion is not so unlikely that Hearne can demonstrate actual innocence.

To be sure, "[e]ven if a defendant was incarcerated for over a year, . . . that does not necessarily eliminate reasonable doubt that he knew of his felon status." Greer, 593 U.S. at 519 (Sotomayor, J., concurring in part and dissenting in part). Largely crediting Hearne's testimony, the Court concedes that reasonable doubt may exist as to whether he understood his status as a felon. But in the actual-innocence context, that is not enough. Schlup, 513 U.S. at 329. In Henderson, the D.C. Circuit held that, despite the defendant's learning disabilities and youth at the time of pleading to violating § 922(g), he had not proffered enough evidence to show he was unaware of his status as a felon and therefore could not meet the "exacting standard" for actual innocence. See 108 F.4th at 903–05. So too here. Cf. Eastridge v. United States, 372 F. Supp. 2d 26, 51–56 (D.D.C. 2005) (holding that the actual-innocence standard was satisfied where newly available testimony indicated that defendants were not present for the murder for which they were convicted), abrogated on other grounds by Ibrahim v. United States, 661 F.3d 1141

(D.C. Cir. 2011). Given that the exception for actual innocence is reserved for "extraordinary" cases, McCleskey, 499 U.S. at 494, Hearne does not fall within its ambit.

## IV.     Conclusion

For these reasons, the Court will deny Hearne's Motion to Vacate. A separate Order so stating will issue this day.

<u>/s/ James E. Boasberg</u>  
JAMES E. BOASBERG  
Chief Judge

Date: <u>October 7, 2024</u>